DAVIS et al. v. A. H. REID CREAMERY & DAIRY SUPPLY CO.†

(Circuit Court of Appeals, Third Circuit. April 5, 1912.)

No. 1,534.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CREAM SEPARATOR.

The Davis patent, No. 521,104, for a separator for liquids, claim 1, in view of the prior art, and especially of the Schultz German patent of 1890, can only be sustained by giving it a very narrow construction, limiting it to the precise structure described and shown; as so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in equity by Maud R. Davis, administratrix, and others, against the A. H. Reid Creamery & Dairy Supply Company. Decree for defendant, and complainants appeal. Affirmed.

For opinion below, see 187 Fed. 157.

Wm. Houston Kenyon (Kenyon & Kenyon, on the brief), for appellants.

Robert Fletcher Rogers (Rogers, Kennedy & Campbell and Donald Campbell, on the brief), for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. This is a suit in equity alleging infringement on the part of the appellee of patent No. 521,104 issued to one Daniel J. Davis, June 5, 1894, for a centrifugal separator for liquids. At final hearing the court below, in an opinion reported in 187 Fed. 157, dismissed the bill of complaint on the ground that the patent, in view of the prior art, was invalid. The patent contains several claims, of which the first only is in issue. It is as follows:

"1. In centrifugal separators for liquids, the combination with the drum having an elongated neck with an outlet therein, of the removable separating dome inclosed liquid-tight but detachably by said neck beyond the outlet thereof and interspaced from the drum-wall by a suitable stop whereby a free channel is established from the drum interior to the outlet at the neck substantially as described."

The device is especially designed for dairy purposes by separating the cream from the whole milk. A very full and detailed description of its operation may be found in the opinion above refered to, and its repetition here is unnecessary. The decree of invalidity entered in the Circuit Court is based upon the disclosures of two prior patents, one a British patent of 1887 to one Bergh, the other a German patent of 1890 to one Schultz. The former was cited by the Examiner in

the Patent Office, but the latter was not. Had it been, it is difficult to see how the claim in issue could have been allowed, at least in the broad terms in which it appears. The British patent discloses the drum, neck, and dome of the patent in suit, sustaining substantially the same relation to each other and performing substantially the same functions that they do in the Davis patent. In Bergh, however, the dome and neck are "secured together, for instance by soldering," while in the patent under consideration they are attached by a screw connection, making them readily separable, and therein lies the main difference between them. Schultz, however, shows them in a separable form, but, instead of using a screw connection for that purpose, he substituted a slip joint. He, moreover, made them separable for the same declared purpose that Davis did, viz., that the parts might be more easily and readily cleansed. Schultz, furthermore, speaks of the space provided by his patent between the double discs for the reception and discharge of the skim milk, as displacing the "small pipes ordinarily used for that purpose." Davis also dispenses with them in practically the same way, and gives the same reason therefor. In short, Davis adopted substantially the same means that Schultz had to accomplish identically the same purpose. The learned judge, who heard the case below, characterized the German patent as "a complete anticipation of the (Davis) invention, both in terms and in substance." It will be observed that the claim in issue is of a broad and comprehensive character, but manifestly, in view of the prior art, it can only be upheld by limiting it to the apparatus shown and described by the drawings and specification. Davis, while undoubtedly embodying the broad disclosures of Bergh and Schultz, nevertheless introduced certain modifications and alterations therein, which may perhaps be sustained as improvements. He cannot, however, by claiming what for years prior to his invention had been fully disclosed in the art, obstruct any further advances therein. Others had as much right as he to adopt or modify the disclosures of Bergh and Schultz. Under the circumstances, we base our decision upon the ground that the defendant's apparatus does not infringe the patent in suit, which, by the way has expired, consequently the complainants would not, under any circumstances, be entitled to injunctive relief. Moreover, in view of the laches of the complainants disclosed by the record, it might well be held, were it necessary, that they are not entitled to an accounting of profits and damages. Inasmuch, however, as we have, as just stated, found in favor of the defendant upon the issue of infringement, that question need not be considered. Upon the question of infringement, it should be remarked at the outset that the defendant, except in mere matters of form, more closely follows the Schultz device than it does that of Davis. It is true that it uses a dome of conical shape as Davis does, but this, since it had previously been shown by Bergh, was its right. Moreover, the defendant uses the slip joint of Schultz in connecting its neck and dome, rather than the screw connection of Davis, which joint, however, need not be, and is not the "liquid-tight" joint of the Davis patent. In that patent the drum is held in position by the screw joint, and stops, while

in the alleged infringing device the drum is in the main supported and confined between an interior liner or partition and the drum head, while its slip joint is comparatively loose, and not liquid tight. In so far as the element of the claim, which calls for a "stop," is concerned, that, too, was shown by Schultz.

Some question was indeed made at the argument as to whether or not Schultz showed a stop. There appears in his drawing, however, that which has the form and appearance of a stop, and which undoubtedly exercises the function of a stop, and apparently no other. Furthermore, it is a question whether this element in combination shows patentable novelty. Given the problem of keeping two discs separated at a predetermined distance, while a screw is being operated for the purpose of drawing them together, it would seem that the necessity of an interposed check or stop of some kind, at the requisite point, would almost instantly suggest itself to the mind of the skilled mechanic, and be as speedily applied. Davis' stop is nothing more or less than a shoulder or flange affixed at the end of the screw thread. The same result could readily have been obtained in divers other simple mechanical ways. But, however that may be, in the defendant's device the stop, if it has one, is located below the skim milk outlet as in Schultz, and not above as in Davis. Defendant's construction provides between the drum and the under surface of the dome cover a series of four radial ribs which the complainants contend are the stops of the patent in suit. It is possible that in some circumstances they would, if of a proper thickness, constitute a stop, but the evidence discloses a form of the defendant's apparatus wherein they do not constitute a stop. Their chief function is to prevent the skim milk from whirling around the drum, as it may and does do in the Davis device. In the complainant's structure the space between the dome and the bowl cover is unobstructed. A circumferential channel extending unobstructedly entirely around the dome is shown by the Davis drawings, which the specification describes as follows: .

"Within the neck of the bowl and interspaced therefrom, so as to afford a free passage or channel substantially around the whole circuit of the vessel, is a separating dome *E* which conveniently conforms in shape to the taper of the neck and shoulder of the vessel, and is snugly enclosed by the throat of said neck and beyond the vent hole."

The complainant's counsel contends that this language means that the "free passage or channel," referred to is radial rather than circumferential, but the language just quoted seems to warrant, if not compel, a contrary construction. At all events, the patent in suit calls for a "free passage" of some character, while the defendant's device does not show a free passage of any character, but rather a designedly obstructed passage. The complainant's expert, moreover, while claiming that the defendant's ribs are stops, admits that they have great advantages. Thus he says:

"They have also another incidental advantage. Where there are no such ribs (and there are none in the particular Davis machine shown in the drawings of the Davis patent), the skim milk as it travels upward toward the center tends to move circumferentially forward faster than the metal parts of the neck toward which it is moving, because the radius is becoming smaller.

This racing forward of the skim milk is an evil, and not an advantage. It does not help the discharge of the skim milk, but rather the reverse. It is not one of the objects sought in the Davis invention, nor is it mentioned in the Davis patent. The ribs in defendant's device tend to reduce it or prevent it, and so tends to facilitate the discharge of the skim milk."

Furthermore, in form, location, and function, they differ so radically from the "stops" of the Davis patent that they cannot be considered equivalents. Again, in the defendant's device, the dome, as already suggested, is held in position in the bowl by being clamped against it. This construction of itself measurably obviates the necessity of the stops of the patent in suit. In short, if it were admitted that the elements of the defendant's separator are the elements of the patent in suit, they are nevertheless not combined or arranged to coact in the same way, nor do they perform the prescribed functions of the patent in suit. For the reasons given, including the necessarily limited and restricted construction which has been put upon the Davis patent, in order to sustain it, we are satisfied that it has not been infringed by the defendant.

The decree of the court below is accordingly affirmed, with costs.